WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorneys for Appellants,
Allied Management Trust, K. Yeganeh

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, | ) Case No.  C 07-03256 JSW |
| | ) Bankruptcy No. 05-30047 TEC |
| | ) Adversary Proceeding No. 05-3241 TC |
| _____Debtor._____ | ) |
| CHARLES E. SIMS, Trustee, | ) APPELLANTS' OPENING |
| | ) BRIEF ON APPEAL FROM THE |
| Plaintiff/Appellee, | ) BANKRUPTCY COURT'S |
| v. | ) "FINAL JUDGMENT"; AND PROOF |
| | )  OF SERVICE |
| ALLIED MANAGEMENT TRUST, | ) |
| K. YEGANEH, | ) |
| | ) |
| _____Defendants/Appellants._____ | ) |

Appellants' Opening Brief on Appeal

# TABLE OF CONTENTS

TOPIC                                                                    PAGE

TABLE OF AUTHORITIES                                                      iii

APPELLANTS' OPENING BRIEF ON APPEAL FROM                                  1
THE BANKRUPTCY COURT'S "FINAL JUDGMENT"

BASIS OF APPELLATE JURISDICTION                                          1

ISSUES PRESENTED AND STANDARD OF REVIEW                                  1

STATEMENT OF THE CASE                                                    2

STATEMENT OF FACTS                                                       3

ARGUMENT                                                                 11

I      THE LEGAL REQUIREMENTS RE SUMMARY                                 11
       JUDGMENT MOTIONS IN BANKRUPTCY COURT

II     APPELLANTS AND DEBTOR SHOULD NOT                                  14
       HAVE BEEN PRECLUDED FROM INTRODUCING
       EVIDENCE ALREADY PRODUCED IN
       OPPOSITION TO APPELLEE'S SUMMARY
       JUDGMENT MOTION AND AT THE SUBSEQUENT
       TRIAL

       A.   The Fifth Amendment Issue.                                   15

       B.   The Alleged Failure to Preserve and Produce                  18
            Documents Issue.

       C.   The Failure to Disclose Evidence/Respond to                  19
            Discovery Issue.

       D.   Conclusion re Evidence Exclusion Issue.                      20

| TOPIC | | PAGE |
|---|---|---|
| III | THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANTS' CROSS-MOTION FOR SUMMARY JUDGMENT IN THAT THE APPELLEE/TRUSTEE LACKS STANDING TO EVEN PROSECUTE THIS ADVERSARY PROCEEDING, SINCE THE CREDITORS HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF THESE ALLEGED FRAUDULENT TRANSFERS | 20 |
| IV | THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT IN THAT THERE ARE MATERIAL ISSUES OF FACT REGARDING THE ISSUE OF FRAUDULENT INTENT | 26 |
| A. | The Standing Issue. | 26 |
| B. | Material Issues of Fact Exist in this Matter. | 26 |
| | CONCLUSION | 30 |

## **TABLE OF AUTHORITIES**

| STATUTE | PAGE |
|---|---|
| B&P C { 17200 | 3 |
| CC }} 3439, et seq. | 3, 13, 21, 25 |
| CC } 3439.01 | 22 |
| CC { 3439.01(b) | 22 |
| CC } 3439.01(c) | 23 |
| CC } 3439.04(a) | 21 |
| CC } 3439.04(a)(1) | 13, 26-27, 29 |
| CC } 3439.04(a)(2) | 28 |
| CC } 3439.04(b) | 26 |
| CC } 3439.04(b)(9) | 28 |
| CCP } 1021.5 | 22 |
| Evid C } 623 | 25 |
| 11 U.S.C. } 101(5)(a) | 22 |
| 11 U.S.C. } 101(10)(A) | 23 |
| 11 U.S.C. } 501 | 24 |
| 11 U.S.C. } 502 | 24 |
| 11 U.S.C. } 544 | 3 |
| 11 U.S.C. } 544(a) | 20, 23 |
| 11 U.S.C. } 544(b) | 20, 23 |

| STATUTE | PAGE |
|---|---|
| 11 U.S.C. } 726 | 24 |
| 28 U.S.C. } 158 | 1 |

| CASE | PAGE |
|---|---|
| A. Farber and Partners, Inc. v. Garber (C.D. Cal. 2006) 234 F.R.D. 186 | 15, 17-18 |
| Aggregates Associated, Inc. v. Packwood (1962) 58 Cal.2d 580 | 12 |
| Aguilar v. Lerner (2004) 32 Cal.3d 974 | 25 |
| Akiona v. United States (9th Cir. 1991) 938 F.2d 158, cert. den. 503 U.S. 962 (1992) | 18 |
| Annod Corp. v. Hamilton & Samuels (2002) 100 Cal.App.4[th] 1286 | 12, 26-27 |
| A/S Kreditt-finans v. Cia Venetico De Navegacion, S.A. of Panama (E.D. Pa. 1983) 560 F.Supp. 705 | 21 |
| Bennett v. Paulson (1935) 7 Cal.App.2d 120 | 21 |
| Bulmash v. Davis (1979) 24 Cal.3d 691 | 12, 27 |
| Butner v. United States (1979) 440 U.S. 48, 59 L.Ed.2d 136, 99 S.Ct. 914 | 22 |
| Cambridge Electronics Corp. v. MGA Electronics (C.D. Cal. 2004) 227 F.R.D. 313 | 15, 19 |
| Flannery v. Prentice (2001) 26 Cal.4[th] 572 | 22 |
| Flip v. Bucurenciu (2005) 129 Cal.App.4[th] 825 | 12, 27 |

iv

CASE                                                          PAGE

Folsom v. Butte County Assn. of Governments                  22
(1982) 32 Cal.3d 668

Hansen v. Cramer (1952)                                      14, 28-29
39 Cal.2d 321

Haskins v. Certified Escrow & Mtge. Co. (1950)              21
96 Cal.App.2d 688

In re Arnold (6th Cir. 1990)                              2
908 F.2d 52

In re Bagen (Bkrtcy. S.D.N.Y. 1995)                        23
185 B.R. 691

In re Bennett Funding Group, Inc.                          11
(Bankr. N.D.N.Y. 1997) 220 B.R. 743

In re Berry Estates, Inc. (D.C. 1985)                      23
49 B.R. 1002

In re Bridge (3rd Cir. 1994)                             20, 23
18 F.3d 195

In re Colombo (Bankr. W.D.N.Y. 2004)                       11
316 B.R. 429

In re Drehsen (M.D. Fla. 1995)                             2
190 B.R. 441

In re First Alliance Mortg. Co. (C.D. Cal. 2001)           22-24
269 B.R. 428

In re Marrama (D. Mass. 2005)                              16
331 B.R. 10

In re P&L Credit and Collection Services, Inc. (W.D.N.Y. 2000)  24
248 B.R. 32

In re Phillips and Hornsby Litigation (M.D. La. 2004)      12, 27, 30
306 F.Supp.2d 631

| CASE | PAGE |
|------|------|
| In re Serrato (Bkrtcy. N.D. Cal. 1997)<br>214 B.R. 219 | 12, 26 |
| In re Stern (9th Cir. [Cal.] 2003)<br>345 F.3d 1036 | 12 |
| Matter of AM, Federation of T.V. & Radio Artists<br>(Bkrtcy. 1983) 30 B.R. 77 | 23 |
| Matter of Pizza of Hawaii, Inc. (9th Cir. 1985)<br>761 F.2d 1374 | 2 |
| Matter of Plunkett (7th Cir. 1996)<br>82 F.3d 738 | 23-24 |
| Mehrtash v. Mehrtash (2001)<br>93 Cal.App.4th 75 | 21, 25 |
| MW Erectors, Inc. v. Niederhauser Ornamental<br>& Metal Works Co., Inc. (2005)<br>36 Cal.4th 412 | 25 |
| Oldham v. Parker (N.D. TX 1925)<br>5 F.2d 682 | 23 |
| Premium Serve. Corp. v. Sperry & Hutchinson Co.<br>(9th Cir. 1975) 511 F.2d 225 | 17 |
| Sarnoff v. Ciagilia (1947)<br>165 F.2d 167 | 11-12, 27, 29 |
| Spevack v. Klein (1967)<br>385 U.S. 511, 17 L.Ed.2d 574, 87 S.Ct. 625 | 15 |
| T W M Homes, Inc. v. Atherwood (1963)<br>214 Cal.App.2d 826 | 12-13, 26-27, 29 |
| United States v. Gypsum Co. (1948)<br>333 U.S. 364, 68 S.Ct. 525, 92 L.Ed.2d 746 | 2 |
| U.S. v. 4003-4005 5th Ave., Brooklyn NY (2nd Cir. 1995)<br>55 F.3d 78 | 15-16 |

| OTHER AUTHORITIES | PAGE |
|---|---|
| Fifth Amendment | 14-16, 18, 30 |
| | |
| Federal Rules of Civil Procedure, Rule 56 | 11 |
| Federal Rules of Evidence, Rule 302 | 25 |
| | |
| Bankruptcy Rules of Procedure, Rule 3001(a) | 23 |
| Bankruptcy Rules of Procedure, Rule 3002(c) | 23 |
| Bankruptcy Rules of Procedure, Rule 7056 | 11 |
| Bankruptcy Rules of Procedure, Rule 8001 | 1 |
| Bankruptcy Rules of Procedure, Rule 8013 | 2 |
| Bankruptcy Rules of Procedure, Rule 9017 | 25 |
| | |
| Collier on Bankruptcy, Fifteenth Edition Revised, Vol. 5, } 544.02, p. 544-6 | 20, 23 |

WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorneys for Appellants,
Allied Management Trust, K. Yeganeh

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re RAMIN YEGANEH,                         )    Case No.  C 07-03256 JSW
                                             )    Bankruptcy No. 05-30047 TEC
                                             )    Adversary Proceeding No. 05-3241 TC
_____Debtor._____ )
CHARLES E. SIMS, Trustee,                    )    APPELLANTS' OPENING
                                             )    BRIEF ON APPEAL FROM THE
            Plaintiff/Appellee,              )    BANKRUPTCY COURT'S
v.                                           )    "FINAL JUDGMENT"
                                             )
ALLIED MANAGEMENT TRUST,                     )
K. YEGANEH,                                  )
                                             )
_____Defendants/Appellants._____ )

Defendants/Appellants Allied Management Trust and K. Yeganeh (hereinafter "appellants") respectfully submit their opening brief on their appeal from the Bankruptcy Court's "Final Judgment" in this matter.

## BASIS OF APPELLATE JURISDICTION

Title 28 of the United States Code section 158 and Rules of Bankruptcy Procedure, Rule 8001 authorize an appeal from a final judgment of the bankruptcy court directly to the United States District Court.

## ISSUES PRESENTED AND STANDARD OF REVIEW

1       The issues in this appeal are as listed in the appellants "Designation of Record and

2   Issues on Appeal" filed in the bankruptcy court on June 15, 2007. (See Doc# 7[1].) Of

3   course the salient issues will be whether the Bankruptcy Court erred and/or abused its

4   discretion in granting plaintiff/trustee's (hereinafter "appellee") motion for summary

5   judgment and whether the Bankruptcy Court erred and/or abused its discretion in denying

6   appellants' cross-motion for summary judgment. Additionally, appellants wish to present

7   argument on the issue of whether the Bankruptcy Court erred and/or abused its discretion

8   in granting appellee's motion to preclude appellants from introducing any evidence that

9   said appellants, rather than the debtor, Ramin Yeganeh, were the true owners of the

10  properties at issue before the transfers of same. An appellate court may consider any

11  issue presented by the record, even if the issue was not presented to the bankruptcy court.

    (Matter of Pizza of Hawaii, Inc. (9th Cir. 1985) 761 F.2d 1374, 1379.)

12      The standard of review in this appeal is that the appellants must demonstrate that the

13  lower bankruptcy court's findings are clearly erroneous. The bankruptcy court's

14  conclusions of law are reviewed de novo. (Matter of Pizza of Hawaii, Inc., supra, at 761

15  F.2d 1377; In re Drehsen (M.D. Fla. 1995) 190 B.R. 441, 442; Rules of Bankruptcy

16  Procedure, Rule 8013.) A finding is clearly erroneous when, although there is evidence

17  to support it, the reviewing court on the entire record, is left with the definite and firm

18  conviction that a mistake has been made. (United States v. Gypsum Co. (1948) 333 U.S.

19  364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746, 766; In re Arnold (6th Cir. 1990) 908 F.2d

    52, 55.)

20

21                   STATEMENT OF THE CASE

22      This action is an appeal from a final judgment of the Bankruptcy Court of the

23  Northern District of California, the Honorable Thomas E. Carlson, presiding. This final

24  judgment was that court's granting of the appellee's motion for summary judgment and

25  the denial of the appellants' cross-motion for summary judgment, entered on June 11,

26

27  ---

28  [1] This reference to the record refers to Doc #7 of the District Court, which is the bankruptcy record on appeal. The appellants designate specific parts of the record by the title of the document. All documents are arranged chronologically.

2007.  (Doc#7, the Final Judgment of the Bankruptcy Court.)  The final judgment itself was entered on July 30, 2007.

Pursuant to that final judgment the Bankruptcy Court held that the transfer of the following five real properties by the debtor to Appellant Allied Management Trust and the subsequent transfer from that trust to Appellant K. Yeganeh would be avoided as intentionally fraudulent transfers under Title 11 of the United States Code, section 544, and California Civil Code sections 3439.04, et seq.  The five real properties at issue are: 2462 Taylor Avenue, Oakland, California; 2300 Auseon Avenue, Oakland, California; 1012 73rd Avenue, Oakland, California; 1278 79th Avenue, Oakland, California; and 1086 69th Avenue, Oakland, California (hereinafter "subject properties").

As will be argued below, the Bankruptcy Court erred and/or abused its discretion in denying appellants' cross-motion for summary judgment because the individual creditors at issue have had their claims completely paid off and hence have suffered no harm.  The Bankruptcy Court also erred and/or abused its discretion in granting appellee's motion for summary judgment because said appellee/trustee lacked standing to bring same due to the fact that the individual creditors have been paid off and have suffered no harm, and because the debtor transferred the subject properties to the appellants for fair consideration due to the fact that in doing so the debtor was not rendered execution proof.  That is, the debtor still had plenty of assets to pay off the individual creditors at issue here, and his bankruptcy estate did so.  As a result the debtor had no intent to defraud anyone.

STATEMENT OF FACTS

On October 4, 1999, the debtor, Ramin Yeganeh, was sued by Plaintiff Ingram and Plaintiff Wobogo in the Superior Court of San Mateo County, Case No. 410586. Plaintiff Ingram sued on behalf of herself and her causes of action were all settled with a waiver of attorney's fees and dismissed back on April 25, 2001.  Plaintiff Wobogo sued on behalf of the general public with a single cause of action under Business and Professions Code section 17200 for unfair business practices, although she admitted that she had never done business with the debtor and had never suffered any loss or injury.

On June 3, 2004, a temporary judge issued a judgment against the debtor and in favor of Plaintiff Wobogo for $270,000. This $270,000 underlying judgment named certain individual claimants who had allegedly done business with the debtor in the past.

On September 9, 2004, the same temporary judge issued his "Order Re Award of Attorney's Fees, Costs, Prejudgment Interest, and Related Findings; Order for Entry of Judgment". In said order, the temporary judge issued a judgment awarding $2.3 million with a 1.5 multiplier, or $3.5 million in attorney's fees, plus costs of approximately $32,000, and prejudgment interest totaling approximately $130,000 on the underlying $270,000 judgment. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #42.) The debtor timely filed his civil appeals to these judgments.

On January 7, 2005, the debtor filed a Chapter 13 Bankruptcy Petition in pro per. This bankruptcy was converted to a Chapter 7 at the request of the creditors. On February 25, 2005 the debtor filed his bankruptcy schedules, including, Bankruptcy Schedule A, which is a list of all his real properties. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #1.) The debtor's real properties consist of seven properties, all listed on his Bankruptcy Schedule A.

On February 23, 2005, the appellee, the Chapter 7 trustee, filed his four adversary proceedings against the defendants/appellants, the debtor's parents, alleging that the debtor had fraudulently transferred the adversary properties, which are properties other than the debtor's Schedule A properties, to the defendants/appellants, some two to three years prior to the entry of the civil judgments against the debtor. The appellee alleged that said transfers constituted fraudulent transfers under California's UFTA. He alleged that the debtor had the "actual intent to hinder, delay, or defraud" his creditors and/or as a result of these so-called "transfers" he became insolvent. The debtor and the appellants denied these allegations.

On February 17, 2006, the appellee filed his "Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors". (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #2.) In this 'Notice' the appellee stated that at the request

of the creditors he intended to move the Court to dismiss the debtor's pre-petition civil appeals which were the debtor's only means of challenging the civil judgments, including the attorney's fees award.  Thus the appellee allowed a $400,000 secured claim for the individual creditors, and some $3.6 million in total attorneys' fees, in the form of unsecured claims, for the civil attorneys involved.  On March 9, 2006, the debtor filed an "Objection to Trustee's Notice of Intent to Compromise".  On March 24, 2006, the appellee filed a "Trustee's Memorandum in Reply to Objection to Compromise".  (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #3.)  In this 'Memorandum in Reply' the appellee reiterated his position that the attorney's fees award did not belong to Plaintiff Wobogo or the individual creditors, but belonged solely to the civil attorneys.  (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #3, p. 6, lines 18-21.)  However the civil attorneys had never submitted a claim for their attorneys' fees in the Bankruptcy Court prior to the July 18, 2005 claim's submission deadline.

On April 8, 2006, the Bankruptcy Court approved the appellee's compromise in its "Order Authorizing Compromise".  (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #4.)  In doing so the Bankruptcy Court adopted the appellee's position that regardless of whether Proposition 64 was retroactive or not, the attorney's fees award belonged solely to the attorneys and not to Plaintiff Wobogo (who would be removed as plaintiff if Proposition 64 was ruled retroactive), and also not to the individual creditors who had allegedly been harmed.  (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #4, pp. 2-3.)  However as stated above the civil attorneys have never submitted a claim for their attorneys' fees.  The debtor timely appealed this Bankruptcy Court's "Order Authorizing Compromise".  This appeal is now pending before the Ninth Circuit Court of Appeals.

As a result of the 'Compromise', the appellee has dismissed the debtor's pre-petition civil appeals.  So far, the appellee has also liquidated five of the debtor's seven Schedule A properties: 1611 Shoreview Avenue, San Mateo, CA for $670,000; 786 5th

Avenue, Redwood City, CA for $610,000; 3912 Kent Way, South San Francisco, CA for $651,000; 150 Broadway Street, Redwood City, CA for $710,000; and 182 Dublin Street, San Francisco, CA for $638,000. The total gross sales proceeds from these properties were $3,279,000. There were three mortgages on three of these properties which added up to $898,341. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibits ## 6, 7, 8, 9, 10, 11.)

The appellee's attorneys and accountants were given compensation by this Bankruptcy Court totaling $403,128.85 as of June of 2006. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibits ## 12, 13, 14, 15.) Therefore, after deducting the remaining mortgage balances of $898,341 and the amounts awarded to appellee's attorneys and accountants of $403,128.85 from the gross sales proceeds of the debtor's above-referenced five properties, the net sales proceeds remaining total approximately $1,976,871. Hence it would seem that this $1.9 million amount is more than sufficient to pay off the individual creditors' approximate $400,000 in allowed claims. In fact the appellee, who is the bankruptcy trustee, did pay off the individual creditors' $400,000 in allowed claims on November 30, 2006. The appellee also sent $670,000 to the civil attorneys' for their unsecured attorneys' fees on June 30, 2007.

The appellee asked the Bankruptcy Court to have the individual creditors' claims be allowed as a secured claim against this debtor's estate. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #4, p. 2.) These secured claims of the individual creditors have been paid in full. The appellee also asked the Bankruptcy Court to have the attorneys' fees award and the multiplier be unsecured. (Ibid.) Thus the attorneys' fee award and the multiplier are now unsecured and as of today, the civil attorney's have received $670,000.

The remaining balance after the liquidation of all of the debtor's Schedule A properties will be applied to the unsecured attorney's fees award as provided by the Bankruptcy Court's "Order Authorizing Compromise". (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's

Motion for Summary Judgment, Exhibit #4, pp. 2-3.) The unpaid balance of the unsecured attorneys' fees award, whatever it may be, after the sale of all of the debtor's Schedule A properties, shall remain unsecured as the appellee and the individual creditors requested in their own compromise. However, now the appellee wants to get his hands on the defendants/appellants', the debtor's elderly parents', properties by prosecuting this and three companion adversary proceedings[2]. The appellee plans to liquidate the defendants/appellants' properties which are the subject properties in this and the three companion adversary proceedings in order to take his attorneys' fees off the top and send the remainder to the civil attorneys whose claims are now unsecured. The appellee should not be allowed to do so.

The debtor was a mortgage broker and a real estate broker back in the 1990's. The debtor, using his own money, which he earned over the years, acquired several pieces of property back in the 1990's, some of which he sold, and seven of which he kept. These properties, which include the debtor's home, are listed on the debtor's bankruptcy Schedule A. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #1.)

The subject properties which are the subject of the adversary proceeding at issue here, No. 05-3241, belong to the debtor's elderly father, Appellant K. Yeganeh, because these properties were purchased by said appellant's money and for his benefit in 2002 and early 2003, though at times in the past the debtor was also on title. Appellant K. Yeganeh is a retired medical doctor. He is a 78 year-old elderly man who has worked most of his life as a medical doctor and has saved his money to acquire the subject properties for his retirement. He asked his son, the debtor, who was in the real estate profession, to purchase these subject properties for him with the appellant's money. The subject properties which are the subject of this instant adversary proceeding were all purchased in 2002 and early 2003, at least one and a half to two years before there was any civil judgment against the debtor. The appellant has been paying the property taxes, property insurances, and the mortgage payments on the subject properties ever since they

---

[2] These three companion adversary proceedings are not in issue in this appeal.

Appellants' Opening Brief on Appeal        -7-

were purchased back in 2002 and 2003. Hence this appellant is the equitable and beneficial owner of the subject properties.

Soon after the five subject properties were purchased in 2002 and early 2003, they were put in Appellant K. Yeganeh's trust, Appellant Allied Management Trust, in March and May of 2003. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibits ##17, 18.) Later, Appellant K. Yeganeh took the subject properties out of his trust, Allied Management Trust, and put them into his individual name on November 29, 2004, months before the debtor filed for bankruptcy, and months before the adversary proceeding complaint was properly served. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit # 19.)

If the debtor intended to "transfer" his properties to his father, the appellant, why didn't he transfer all the properties, including his Schedule A properties? Why didn't the debtor sell these properties and pocket the money? Obviously the appellee cannot prove that the debtor intended to "hinder, delay, or defraud" his creditors. Most importantly if the debtor intended to "hinder, delay, or defraud" his creditors, why did he purchase the subject properties in 2002 and 2003? Certainly an individual who wishes to "hinder, delay, or defraud" his creditors, would not want to acquire additional properties as we have here. An individual who wishes to "hinder, delay, or defraud" his creditors would want to sell properties rather than acquire more properties in order to make himself judgment proof. Therefore appellee's contention that the debtor purchased the subject properties in 2002 and 2003 and then "transferred" them to his father, the appellant or the trust, in March and May of 2003, in order to avoid his creditors, is illogical and makes no sense. Thus the Bankruptcy's Court's acceptance of the appellee's illogical view is clearly erroneous.

On October 4, 2001, Wobogo's attorneys obtained a Modified Preliminary Injunction. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #31.) Said modified injunction prohibited the debtor from selling, transferring, or encumbering his properties without court permission for purposes other than paying his attorneys' fees or

costs or living expenses. This debtor has never sold, transferred, or encumbered any of his properties. The debtor's seven Schedule A properties are the same properties that he owned back then. The adversary properties that are the subject of this appeal do not belong to the debtor. Thus this injunction never affected these properties.

As stated above, there was no judgment entered against the debtor until the June 3, 2004 $270,000 underlying judgment. Even then, the debtor could have easily satisfied this underlying judgment by selling one or more of his Schedule A properties if he was allowed to. It wasn't until September 9, 2004, over one and a half years after the alleged "transfers" in March and May of 2003, that the debtor was hit with the incredible $3.5 million attorneys' fees award. The debtor is not a psychic. No one, not even the debtor's attorneys, in their wildest imagination could have predicted such an outrageous award, one or two years in advance. Therefore, the appellee's allegations that the conveyances of adversary properties, which are non-Schedule A properties, were fraudulent transfers and were intended to hinder, delay, or defraud the debtor's creditors or by making him insolvent, are baseless. Back in 2002, the debtor was not insolvent. He owned his seven properties which were the very same properties he owned in 2003, in 2004, and in 2005, the very same properties he listed on his Schedule A. In August of 2005 the appellee, the debtor's Chapter 7 trustee, liquidated just one of the debtor's Schedule A properties for $638,000 which had no mortgages, and the net proceeds of that sale were more than sufficient to payoff the $270,000 underlying judgment plus prejudgment interest, or the $400,000 individual creditors' claims. (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #10.)

If the debtor intended to hinder, delay, or defraud his creditors, he could have sold or transferred all of his seven properties (the Schedule A properties) back in 2001, in 2002, in 2003, or in 2004 (either before or after the judgments) and pocketed the money. The debtor did not do that. Therefore, the appellee's allegations are totally unfounded. Also the appellee's allegations that in 2002 and early 2003, the debtor purchased five properties which are the subject of this adversary proceeding and which he, in March and May of 2003, fraudulently transferred to Appellant Allied Management Trust or his father, Appellant K. Yeganeh, makes absolutely no sense for the same reasoning

1  mentioned above. (See Doc #7, Notice of Lodgment of Documentary Evidence in

2  Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment,

3  Exhibits ##17, 18.)  Why would the debtor, who the appellee alleged "transferred"

4  properties to hide assets in order to "hinder, delay, or defraud" his creditors by making

5  himself judgment proof, then turn around and buy five properties a few months later?

6  Certainly by purchasing five properties in 2002 and 2003, the debtor did not have the

7  "intent to hinder, delay, or defraud" his creditors.  The truth is that the five subject

   properties belong to the appellants and not the debtor.

8          Throughout depositions, as well as other proceedings, the debtor has consistently

9  maintained that he is not the owner of the adversary properties and therefore does not

10 have much documentation other than the public record documents pertaining to these

11 properties.  The defendants/appellants, the debtor's parents, who are the true owners of

12 the subject properties, were able to produce to the appellee copies of their property tax

13 receipts, copies of property insurance bills, copies of mortgage payments, copies of

14 cancelled checks for property tax payments, insurance payments, mortgage payments,

15 and copies of some cashiers checks given to the debtor by the defendants/appellants back

16 in the 1990's to purchase some of the adversary properties.  (See Doc #7, Notice of

17 Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's

   Motion for Summary Judgment, Exhibit #38; see also Doc #7, Opposition to Plaintiff's

18 Motion to Preclude Testimony and Exclude Evidence or Compel Additional Discovery,

19 Exhibits ##1 to 10.)  The defendants/appellants have produced documents over six inches

20 thick to the appellee.  Throughout the course of these adversary proceedings the debtor

21 has always maintained that the adversary properties belong to the debtor's parents, the

22 defendants/appellants, because they paid for them.  The debtor's parents testified in their

23 depositions that their son never gifted them any properties.  (See Doc #7, Notice of

24 Lodgment of Documentary Evidence in Support of Defendants' Opposition to Plaintiff's

25 Motion for Summary Judgment, Exhibits ##39, 40, 41.)

26

27 //

28

## ARGUMENT

### I

### THE LEGAL REQUIREMENTS RE SUMMARY JUDGMENT MOTIONS IN BANKRUPTCY COURT

Rules of Bankruptcy Procedure, Rule 7056, incorporates the requirements of Federal Rules of Civil Procedure, Rule 56, regarding summary judgment motions in civil cases. Rule 56 provides that summary judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled, as a matter of law, to a judgment in its favor. (In re Bennett Funding Group, Inc. (Bankr. N.D.N.Y. 1997) 220 B.R. 743.) The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. (In re Colombo (Bankr. W.D.N.Y. 2004) 316 B.R. 429, 431.) Once the moving party has met its initial burden, the non-movant must then come forward with sufficient evidence on the elements essential to its case to support a verdict in its favor. (Ibid.)

In deciding to grant or deny summary judgment, "the trial court must resolve all ambiguities and draw inferences in favor of the party against whom summary judgment is sought", here the appellants. (In re Bennett Funding Group, Inc., supra, at 220 B.R. 751.) Summary judgment is therefore inappropriate if any evidence exists in the record upon which a reasonable inference may be drawn in favor of the non-moving party. (In re Colombo, supra, at 316 B.R. 431.)

In a summary judgment motion it is not the trial court's duty to decide issues of fact but solely to determine if there are issues of fact to be tried. "All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment", here the appellee. (Sarnoff v. Ciaglia (1947) 165 F.2d 167, 168.) On the issue of fraudulent intent or the intent to hinder or delay a creditor, where there are conflicting declarations from the moving and non-moving parties and it "cannot be categorically determined which of the two statements is true", which is exactly what we have here, summary judgment for the moving party should be denied. (Id. at 165 F.2d 168-169.) "The resolving of such issues must be left to the finders of fact, and not decided upon a motion for summary judgment." (Id. at 165 F.2d

169; see also <u>In re Phillips and Hornsby Litigation</u> (M.D. La. 2004) 306 F.Supp.2d 631, 638-640 [triable issues of fact found in conflicting evidence on actual intent to hinder, delay, or defraud a creditor].)

To prove fraudulent intent or the intent to hinder or delay the creditors, the trustee/appellee bore the burden of proof to prove same by a preponderance of the evidence. (<u>In re Stern</u> (9th Cir. [Cal] 2003) 345 F.3d 1036, 1043.)   However,

> it remains true that <u>actual fraud</u> must be proved
> by <u>clear and convincing evidence</u> [citation], and
> that where the circumstances of the transfer <u>comport</u>
> <u>equally with the theory of honesty and fair dealing,</u>
> <u>fraud will not be found.</u>  (emphasis added)

(<u>Aggregates Associated, Inc. v. Packwood</u> (1962) 58 Cal.2d 580, 588; <u>T W M Home, Inc.</u> <u>v. Atherwood</u> (1963) 214 Cal.App.2d 826, 844.)

Additionally, the issue of whether conveyances of real property under the UFTA contained in Civil Code sections 3439, et seq., were made with fraudulent intent is always a question of fact.  (<u>Bulmash v. Davis</u> (1979) 24 Cal.3d 691, 699; <u>Flip</u> <u>v.</u> <u>Bucurenciu</u> (2005) 129 Cal.App.4[th] 825, 834; <u>Annod Corp. v. Hamilton &</u> <u>Samuels</u>(2002) 100 Cal.App.4[th] 1286, 1294; <u>T W M Homes, Inc.</u>, supra, at 214 Cal.App.2d 844.)  Moreover, in spite of the appellee's numerous representations to the contrary in the Bankruptcy Court, no matter how many "badges of fraud" may exist to show such intent, they do not give rise to any presumption[3] of fraud but are "merely evidence from which an inference of fraudulent intent may be drawn".  (<u>In re Serrato</u> (Bkrtcy. N.D. Cal. 1997) 214 B.R. 219, 229; <u>Annod Corp.</u>, supra, at 100 Cal.App.4[th] 1298; <u>T W H Homes, Inc.</u>, supra, at 214 Cal.App.2d 844-845.)

> an actual intent to defraud 'never arises as a
> matter of law from the existence of any given

---

[3] In the plaintiff's moving points and authorities he repeatedly asserts that the presence of "badges of fraud" in Civil Code section 3439.04(b) can be considered to be a presumption of fraudulent intent. (See Doc #7, Notice of Motion and Motion for Summary Judgment Based Upon Actual Fraud, at page 11, lines 10 to 12, page 12, lines 21 to 23, page 13, lines 3 to 4, page 21, lines 23 to 24, and page 22, lines 3 to 5.)

set of facts.  It must be proved just as any other
material fact in issue.  Its proof is peculiarly dependent
upon the circumstances which surround the questioned
transaction, and the inferences which the trier of the
facts may reasonably draw therefrom'.

(T W M Homes, Inc., supra, at 214 Cal.App.2d 844-845.)

        Appellee's summary judgment should have been denied for several reasons.  First
of all as a matter of law, the trustee/appellee does not have legal standing to even bring
this action under the UFTA contained in Civil Code sections 3439, et seq.  This is
because the basic requirement of such an action is that the creditors for whose benefit the
trustee/appellee is bringing said action under Title 11 of the United States Code, section
544, must have suffered affirmative harm as a result of these alleged fraudulent transfers
of real property.  Since said individual creditors' judgment totals approximately $400,000
(the $270,000 June 3, 2004 civil judgment, plus the approximate $130,000 in
prejudgment interest) and since the trustee/appellee has already liquidated more than
enough of that amount in debtor's Schedule A properties to pay off those claims, there is
no way that the appellee could show that these creditors have suffered any affirmative
harm as a result of the alleged fraudulent transfers of non-Schedule A properties.

        Secondly, there is a triable issue of fact as to any actual fraudulent intent on the
part of the debtor or the appellants in these adversary proceedings, or an intent to hinder,
delay, or defraud any such creditor within the meaning of Civil Code section
3439.04(a)(1).  At the time of the alleged transfers of the adversary properties in March
and May of 2003, neither the debtor nor the appellants even knew the identity of the
individual creditors, the nature of said creditors' claims, nor the amount of said claims.
The sole plaintiff in the civil case was Wobogo.  Wobogo admitted that she never had
any dealings whatsoever with the debtor and that she suffered no personal loss or injury
at the hands of the debtor.  There were no judgments against the debtor at the time of the
alleged transfers.  There were no judgments against the debtor by the individual creditors
until about one and a half years after the alleged transfers.  The debtor certainly did not

become insolvent as a result of these alleged transfers. The debtor owned the same Schedule A properties before and after the alleged transfers in 2003. The debtor owned the same Schedule A properties before and after the judgments in 2004. The alleged transfers pertain to the adversary properties which are properties other than the debtor's Schedule A properties. The debtor certainly did not become insolvent as a result of these alleged transfers of non-Schedule A properties. The debtor still owned his Schedule A properties until the appellee liquidated them to pay off the individual creditors' claims.

Furthermore, the consideration the debtor received for these alleged transfers was a "fair consideration" within the meaning of the UFTA in that said debtor was not rendered execution proof. (See Hansen v. Cramer (1952) 39 Cal.2d 321, 324-325 [the determination of whether the transferor received "fair consideration" within the meaning of the UFTA "depends on whether the debtor is thereby rendered execution proof"].) Hence summary judgment should have been denied. (See Doc #7, Notice of Motion and Motion for Summary Judgment Based Upon Actual Fraud, Exhibit #71, p. 560 [deposition of Defendant Fran Yeganeh prior to this bankruptcy filing where she denied that her son gave her or her husband properties as gifts].)

<u>II</u>

### APPELLANTS AND DEBTOR SHOULD NOT HAVE BEEN PRECLUDED FROM INTRODUCING EVIDENCE ALREADY PRODUCED IN OPPOSITION TO APPELLEE'S SUMMARY JUDGMENT MOTION AND AT THE SUBSEQUENT TRIAL

Appellee argued in the Bankruptcy Court, in his Motion to Preclude Testimony and Preclude Evidence or Compel Additional Discovery, that the appellants and the debtor should be precluded from introducing any evidence in opposition to the summary judgment motions, in this instant adversary proceeding and the three companion adversary proceedings, and at trial because they invoked the Fifth Amendment on certain narrow issues (which is their constitutional right to do so), because they allegedly destroyed records relevant to the issues in these adversary proceedings, and because they failed to adequately respond to discovery requests. As the prior statement of facts have shown and the following arguments will show, the appellants and debtor have answered

1  all relevant questions and have produced all relevant documents that they have, except for

2  the appellants' tax returns, information on rental income from the real properties at issue,

3  and the identity of the tenants, for which they invoked the Fifth Amendment. This is

4  their constitutional right. Consequently appellee's motion to preclude and exclude the

5  introduction of any evidence in opposition to this summary judgment motion and at trial

6  should have been denied.

7      It is well established that whether a litigant should be precluded from introducing

8  evidence in opposition to a summary judgment motion or at trial, is a question of

9  prejudice. That is, the moving party must show prejudice as a result of the non-moving

10 party's invocation of the Fifth Amendment, the destruction of records, and the failure to

11 adequately respond to discovery demands. (U.S. v. 4003-4005 5th Ave., Brooklyn NY

12 (2nd Cir. 1995) 55 F.3d 78, 84 [invocation of Fifth Amendment]; A. Farber and Partners,

13 Inc. v. Garber (C.D. Cal. 2006) 234 F.R.D. 186, 194 [destruction of records]; Cambridge

14 Electronics Corp. v. MGA Electronics (C.D. Cal. 2004) 227 F.R.D. 313, 321, 324 [failure

   to adequately respond to discovery demands].)

15     The following discussion will show that the appellee cannot show prejudice

16 regarding said appellants and the debtor invoking the Fifth Amendment on certain narrow

17 issues, regarding their alleged failure to preserve and produce documents, and regarding

18 their alleged failure to adequately respond to additional discovery demands.

19

20 A. The Fifth Amendment Issue.

21     It is well established that litigants who invoke the Fifth Amendment and those

22 who oppose them should be afforded every reasonable opportunity to litigate a civil case

23 fully and because the exercise of Fifth Amendment rights should not be made

24 unnecessarily costly. In other words, invoking the Fifth Amendment does not mean that

25 one is forfeiting his/her whole case. (See Spevack v. Klein (1967) 385 U.S. 511, 515, 17

26 L.Ed.2d 574, 87 S.Ct. 625; U.S. v. 4003-4005 5th Ave., Brooklyn, NY (2nd Cir. 1995) 55

27 F.3d 78, 83-84.) Trial courts have a duty to

28     seek out those ways that further the goal of permitting

as much testimony as possible to be presented in the
civil litigation, despite the assertion of the privilege.
Thus, if there is a timely request made to the court, the
court should explore all possible measures in order to
'select that means which strikes a fair balance .....
and .... accommodates both parties'.  (emphasis added)

(U.S. v. 4003-4005 5th Ave., Brooklyn NY, supra, at 55 F.3d 84.)

In doing so the trial court should give due consideration to the nature of the
proceeding, how and when the privilege was invoked, and the potential for harm or
prejudice to opposing parties.  A trial court should measure the relative weights of the
parties' competing interests with a view toward accommodating those interests if
possible.  (Ibid.)

In this matter the appellants invoked their Fifth Amendment privilege on only
certain narrow issues, their tax returns, the rental income from the properties in question,
and the identity of the tenants.  These issues are not relevant to the determination of
whether or not these alleged transfers were fraudulent.  It is well established that in
bankruptcy cases a debtor is free to invoke the Fifth Amendment and still even receive a
discharge from his debts.  (See In re Marrama (D.Mass. 2005) 331 B.R. 10, 16.)  The
cases cited by appellee in the Bankruptcy Court regarding this Fifth Amendment issue
involved factual scenarios where the invoking bankruptcy litigant sought to introduce
evidence at trial on issues that he or she had taken the Fifth Amendment on in prior
discovery proceedings.  Of course well-established case law prohibits this.  (See U.S. v.
4003-4005 5th Ave., Brooklyn, NY, supra, at 55 F.3d 84-85.)  This is not the case with
the appellants.  They did not intend to introduce any evidence, whether it be testimonial
or through documents, on the issues in which they invoked their Fifth Amendment rights.

As for the tax returns and the rental income from the properties in question, the
appellee already has the debtor's tax returns.  Additionally, tax returns are private
documents and enjoy a qualified privilege from being produced during discovery
proceedings.  That is,

a public policy against unnecessary public disclosure
arises from the need, if the tax laws are to function
properly, to encourage taxpayers to file complete and
accurate returns.

(Premium Serve. Corp. v. Sperry & Hutchinson Co. (9th Cir. 1975) 511 F.2d 225, 229; A. Farber and Partners, Inc. v. Garber (C.D. Cal. 2006) 234 F.R.D. 186, 191.) The party seeking production of tax returns bears the burden of showing relevancy. (A. Farber and Partners, Inc., supra, at 234 F.R.D. 191.) The defendants/appellants, parents of the debtor, gave money to the debtor in the early 1990's to buy properties for them. The debtor did so. Documentary evidence of these payments from defendants/appellants to the debtor has already been produced to the appellee including copies of some certified checks. (See Doc #7, Notice of Motion and Motion for Summary Judgment Based Upon Actual Fraud, Exhibit 108[4].) Not all of these checks could be produced because the banks don't keep records from that long ago and the defendants/appellants did not have copies of all certified checks from the 1990's.

Hence the appellee cannot show any prejudice from the defendants/appellants' invocation of the Fifth Amendment on these issues and prejudice is a necessary showing in order for the appellee to meet his burden of proof on this motion. (Ibid.) The appellee admitted that he had not been prejudiced nor harmed in his moving papers filed in the Bankruptcy Court: "The defendants cannot defeat Plaintiff's motion for summary judgment with the documents that have been provided." (See appellee's summary judgment moving papers for Adversary Proceeding No. 05-3242[5], page 20, lines 18 to 19.) Appellee also admitted throughout his moving papers that he must show prejudice to prevail on this motion for evidentiary sanctions, and cited case law to that effect. (See appellee's summary judgment moving papers for Adversary Proceeding No. 05-3242, page 22, lines 9 to 13, page 23, lines 18 to 19.) Appellee also requested a remedy for the

---

[4] Appellee, in his moving papers for all four adversary proceedings, repeatedly represents that the appellants never produced any checks they gave to the debtor to purchase property for them. Obviously this is not true.

1    alleged failure by defendants/appellants to comply with additional discovery requests and

2    their invocation of the Fifth Amendment on some narrow issues: "The Court should

3    exclude any documents or other evidence that the defendants attempt to produce that was

4    not previously produced to Plaintiff." (See appellee's summary judgment moving papers

5    for Adversary Proceeding No. 05-3242, page 24, lines 6 to 7.) "The Court should

6    preclude the defendants from introducing any documents or evidence not previously

7    disclosed or produced to Plaintiff in opposition to Plaintiff's motion for summary

8    judgment or at trial." (See appellee's summary judgment moving papers for Adversary

9    Proceeding No. 05-3242, page 24, lines 13 to 15.) Defendants/Appellants agree. They

10   have no other documents. The appellee admitted he has all the information he needed for

11   this summary judgment motion or trial. Thus appellee's motion to exclude evidence

     should have been denied.

12

13        B.   The Alleged Failure to Preserve and Produce Documents Issue.

14        The general rule of law is that a litigant has a duty to preserve evidence he or she

15   knows or should know is relevant to imminent litigation. (A. Farber and Partners, Inc. v.

16   Garber (C.D. Cal. 2006) 234 F.R.D. 186, 193.) However, a party should only be

17   penalized for destroying documents if it was wrong to do so, and that requires at a

18   minimum, some notice that the documents are potentially relevant. (Akiona v. United

19   States (9th Cir. 1991) 938 F.2d 158, 161, cert. den. 503 U.S. 962 (1992).) A sanction for

20   failure to preserve evidence is appropriate only when a party has consciously disregarded

21   its obligation to do so. (A. Farber and Partners, Inc., supra, at 234 F.R.D. 194.)

22   "Moreover, a sanction for destruction of evidence is appropriate only if the destruction

     prejudiced the opposing party." (Ibid.)

23        In this matter, the appellants did not destroy documents. The appellants should

24   not be sanctioned for failing to maintain records dating back from the 1990's. Neither

25   should the debtor. The debtor did not have much documentation because he was not the

26   owner of the adversary properties. The defendants/appellants have already produced six

27   inches worth of documents responsive to the appellee's discovery requests and

28

     _____

     [5] The facts and issues are the same for each of the four motions, except that the addresses of the particular

     Appellants' Opening Brief on Appeal        -18-

supplemental discovery requests prior to their depositions. In contrast the appellee has not produced a single document in response to the defendants/appellants' discovery requests. The underlying litigation against the debtor did not commence until 1999. The underlying litigation had nothing to do with the defendants/appellants or any of the adversary properties. This litigation did not concern the defendants/appellants, parents of the debtor, until this bankruptcy proceeding and these adversary proceedings commenced, in 2005. Consequently, the defendants/appellants were not under any duty to preserve records regarding the real properties in question. Neither was the debtor prior to the commencement of the underlying litigation in 1999.

As explained above, the appellee admitted that he must show prejudice and that he cannot if the defendants/appellants are not allowed to produce further documents. The defendants/appellants had no further documents to produce in their defense against this summary judgment motion and/or at trial. Hence what prejudice can the appellee claim? He already has the debtor's tax returns, he has all the documentation from the underlying state civil litigation, he has all documentation from the debtor's bankruptcy case, and his motion to exclude evidence and motion for summary judgment in this matter is supported by <u>eight inches</u> of documentary exhibits. It seems the appellee has more than enough evidence to do his dirty deed to the appellants.


C. The Failure to Disclose Evidence/Respond to Discovery Issue.

Excluding evidence at trial for failure to disclose or produce same during discovery is proper unless the litigant can show that the violation was either justified or harmless, that is non-prejudicial. (<u>Cambridge Electronics Corp. v. MGA Electronics</u> (C.D. Cal. 2004) 227 F.R.D. 313, 321.)

In this matter the appellants and the debtor have produced all relevant documentation that they have. Additionally as explained above, the appellee admitted he must show prejudice to be successful in this motion to exclude evidence. He admitted that he cannot show prejudice if the appellants are not allowed to introduce additional

---

adversary properties in each motion are different.

documents in their defense. The appellants have no further documents to produce in their defense. Consequently, the appellee has not shown prejudice.


D. Conclusion re Evidence Exclusion Issue.

For the foregoing reasons, the appellee's motion to exclude evidence should have been denied. The dispositive issue in these motions is that the appellee must show prejudice. The appellee admitted he cannot show prejudice. The appellee admitted he had sufficient evidence to win at the summary judgment phase or at trial. Hence said motion should have been denied by the Bankruptcy Court.


III

THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS
DISCRETION IN DENYING APPELLANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT IN THAT
THE APPELLEE/TRUSTEE LACKS STANDING TO EVEN PROSECUTE THIS
ADVERSARY PROCEEDING SINCE THE CREDITORS
HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF
THESE ALLEGED FRAUDULENT TRANSFERS


Title 11 of the United States Code, section 544(a) provides that the trustee "shall have ..... the rights and powers of, or may avoid any transfer of property of the debtor ...... that is voidable by -- a creditor ....". Section 544(a), (b) confer standing on the appellee/trustee under federal law to bring these adversary proceedings on behalf of the individual creditors. However, the extent of the appellee's rights to pursue this adversary complaint is measured by the substantive law of the jurisdiction governing the property in question. (In re Bridge (3rd Cir. 1994) 18 F.3d 195, 200; see also Collier on Bankruptcy, Fifteenth Edition Revised, Vol. 5, { 544.02, p. 544-6 [citing numerous multi-jurisdictional authorities].) The applicable law upon which the appellee as trustee proceeded in this matter, as alleged in this adversary complaint, is California's UFTA

contained in Civil Code sections 3439, et seq. Under this applicable law, avoidance of these alleged fraudulent transfers is available to the appellee/trustee only if he has the status and rights of a creditor where said transfers are "fraudulent as to a creditor". (See CC { 3439.04(a).)

It is well established under California law that a creditor bringing an avoidance action pursuant to Civil Code section 3439, et seq., must have suffered affirmative harm. Civil Code section 3439.04(a) requires the transfer to be "fraudulent as to a creditor". (Mehrtash v. Mehrtash (2001) 93 Cal.App.4[th] 75, 80.)

> A well established principal of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt'. (emphasis added)

(Ibid; Bennett v. Paulson (1935) 7 Cal.App.2d 120, 123; Haskins v. Certified Escrow & Mtge. Co. (1950) 96 Cal.App.2d 688, 691; A/S Kreditt-Finans v. Cia Venetico De Navegacion, S.A. of Panama (E.D.Pa. 1983) 560 F.Supp. 705, 711, aff'd 729 F.2d 1446 (3rd Cir. 1984) ["numerous courts in other jurisdictions in which the issue has arisen have stated as though it were axiomatic the requirement that a creditor be injured by the conveyance it seeks to invalidate".] This is a principal in equity. A plaintiff/creditor seeking the equitable relief of setting aside a transfer of property must show entitlement to relief and inadequacy of a remedy at law. This is axiomatic "because ordinarily creditors do not bother to seek avoidance of debtor's conveyances without a clear prospect of profiting by the litigation." (Mehrtash, supra, at 93 Cal.App.4[th] 80.)

In other words, if the individual creditors in this bankruptcy proceeding who have submitted claims were not harmed or prejudiced as a result of the alleged transfers in question, they are not entitled to relief under California's UFTA. (Mehrtash, supra, at 93 Cal.App.4[th] 81.) These individual creditors' claims have been paid in full. As explained above, the appellee/trustee had approximately $1.9 million in which to pay the approximate $400,000 or so to satisfy the individual creditors' claims in full.

Appellants' Opening Brief on Appeal          -21-

1    Consequently, it is beyond dispute that these creditors have already been paid off

2    from the amounts already obtained from the sale of the debtor's five Schedule A

3    properties.  There can be no triable issue of fact in regards to whether the amount of

4    money obtained from the sale of these properties is sufficient to pay off the individual

5    creditors' claims.  Hence these individual creditors have suffered no affirmative harm as

6    a result of the alleged transfers of non-Schedule A properties and have no standing to

7    bring this action on their own.  So too the appellee, the bankruptcy trustee.

     The remaining issue is 'what about the attorney's fees award'?  The attorney's

8    fees award totals, as outlined in the Bankruptcy Court's "Order Authorizing

9    Compromise", approximately $3.6 million, which has been split into two unsecured

10   claims, one for $2,573,827 and another for $1,050,935.  That court ordered that both

11   sums be directly payable to the attorneys, even though these sums are part of the

12   creditors' claims.  (See Doc #7, Notice of Lodgment of Documentary Evidence in

13   Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit

14   # 4, pp 2(27)—3(4).)

15   It is well established that a "claim" as defined by Civil Code section 3439.01(b)

16   "means a right to payment".  This definition of "claim" in the UFTA is the same as in

17   bankruptcy proceedings.  (See 11 U.S.C. { 101(5)(a); see also CC { 3439.01's

18   "Legislative Committee Comment—Assembly (1986 Addition) ["The definition of

19   'claim' is derived from (former) Section 101(4) of the Bankruptcy Code].)  A "right to

20   payment" is determined by state substantive law, here the law of UFTA and California.

     (Butner v. United States (1979) 440 U.S. 48, 55, 59 L.Ed.2d 136, 99 S.Ct. 914; In re First

21   Alliance Mortg. Co. (C.D. Cal. 2001) 269 B.R. 428, 435.)  According to California law,

22   the right to payment of the attorney's fees in this matter belongs to the attorneys.  (CCP {

23   1021.5; Folsom v. Butte County Assn. of Governments (19820 32 Cal.3d 668, 682 & fn.

24   26; Flannery v. Prentice (2001) 26 Cal.4th 572, 577, 582.)  The appellee cannot argue

25   with that since, as explained below, that has been his position all through this litigation.

26   Indeed in the debtor's underlying attorney's fees judgment, the temporary judge ordered

     that said attorneys fees under Code of Civil Procedure section 1021.5 be paid directly to

27   the attorneys.  (See Doc #7, Notice of Lodgment of Documentary Evidence in Support of

28   Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #42, p. 4.)

Hence this claim for attorney's fees belongs solely to the attorneys, and not to the individual creditors. (See Matter of AM. Federation of T.V. & Radio Artists (Bkrtcy. 1983) 30 B.R. 772, 775 [holding that this instant appellee's law firm of Luce Forward could not be a creditor in that bankruptcy proceeding because the underlying attorney's fees award was awarded to said law firm's client and not the law firm].) Since these attorney's fees belong to the attorneys and not the individual creditors but are still contained in the creditors' bankruptcy claims, said fees are unenforceable in said creditors' claims under applicable state law and thus said creditors lack the requisite standing to assert the right to these attorney's fees in these adversary proceedings. (In re Bagen (Bkrtcy. S.D.N.Y. 1995) 185 B.R. 691, 695.) Consequently this appellee/trustee also lacks standing to bring these adversary actions on the part of the creditors. (11 U.S.C. { 544(a), (b); In re Bridge, supra, at 18 F.3d 198-200; see also Collier on Bankruptcy, supra, at Vol. 5, { 544.02, p. 544-6.)

To assert their "right to payment" of these attorneys fees, said attorneys need to become creditors in this bankruptcy proceeding. Both the UFTA and the Bankruptcy Code define "creditor" to mean a person who has a claim. (CC { 3439.01(c); 11 U.S.C. { 101(10)(A).) If the attorneys want to be a creditor in this bankruptcy proceeding to claim their attorney's fees they must properly file a claim in this Bankruptcy Court. (In re First Alliance Mortg. Co. (C.D. Cal. 2001) 269 B.R. 428, 434-435.)

> By reason of the attorney's prior obligation incurred by the bankrupt or the petitioning creditors, he has a demand which should be paid out of the estate in bankruptcy; hence, he presents a claim in bankruptcy and therefore becomes a creditor of the estate. (emphasis added)

(Oldham v. Parker (N.D. TX 1925) 5 F.2d 682, 683) Thus the attorneys seeking this award of attorney's fees should have filed a timely claim for same in the Bankruptcy Court. (In re Berry Estates, Inc. (D.C. 1985) 49 B.R. 1002, 1005.) A claim is a simple written statement setting forth the potential creditor's claim. (BK Rule, 3001(a); Matter of Plunkett (7th Cir. 1996) 82 F.3d 738, 742.) This claim must be timely, however. In Chapter 7 cases as we have here, it must be filed within 90 days after the first date set for the meeting of creditors. (BK Rule 3002(c).) In this bankruptcy case the claims

submission deadline was July 18, 2005.  It is undisputed that the attorneys seeking the attorneys' fees award in this matter have not yet filed a claim.  May they still file a claim?

"Late-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred."  (Matter of Plunkett, supra, at 82 F.3d 741.)  "Timely presentation is essential to permit investigation and resolution of contests."  (Ibid.)  It is true that Title 11 of the United States Code, sections 501, 502, 726 provide for certain relief from the timely filing of claims.  However this relief is only available if the 'creditor wanna be' did not have knowledge of the bankruptcy proceeding or, if he or she did have such knowledge, it is conditioned upon a proper showing of "excusable neglect" as at least a minimum requirement.  (In re P&L Credit and Collection Services, Inc. (W.D.N.Y. 2000) 248 B.R. 32, 35-36; Matter of Plunkett, supra, at 82 F.3d 741-742.)  "Excusable neglect" has an established meaning.  "One ancillary rule is that inattentiveness to the litigation is not excusable."  (Matter of Plunkett, supra, at 82 F.3d 742.)  An inattentive litigant "cannot expect the judge to rouse him, or permit him to catch up with a case that has passed him by.  Missing a filing deadline because of slumber is fatal."  (Ibid.)

Here the attorneys seeking these attorneys' fees certainly could not claim lack of knowledge of this bankruptcy proceeding.  At least one representative of the Gray Cary law firm had been actively involved in this bankruptcy proceeding from day one.  They are the ones who requested conversion of this debtor's Chapter 13 bankruptcy to a Chapter 7 back in January of 2005.  Also because of said law firm's active involvement in this litigation, said attorneys also could not claim excusable neglect.  They simply slept on their rights.  This is called "inattentiveness to litigation" and will not support a tardy claim filing.  (Ibid.; In re First Alliance Mortg. Co., supra, at 269 B.R. 439 ["If late-filed claims were not barred, it would never be possible to determine with finality what payments are required ..."].)

> The Bankruptcy Code does not require much; a simple, one-page claim suffices.  Creditors who do not do even that much on time, forfeit their entitlement to distributions from the estate.

(Matter of Plunkett, supra, at 82 F.3d 742.)  Hence the tardy attorneys have been precluded from filing any type of claim for these attorneys' fees at this late juncture.

They also cannot argue that the existing creditors should now be entitled to these fees, to collect same, and then to turn the fees over to the attorneys. Throughout this litigation said attorneys have always taken the position that these attorney's fees belonged to the attorneys. (See Exhibits 2, 3, 5.) Hence they are estopped to now take another position. (See BR Rule 9017; FRE 302; Cal Evid C { 623; MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc. (2005) 36 Cal.4th 412, 422:

> Judicial estoppel precludes a party from gaining an
> advantage by taking one position, and then seeking
> a second advantage by taking an incompatible position.
> ............... The doctrine [most appropriately] applies
> when: (1) the same party has taken two positions;
> (2) the positions were taken in judicial or quasi-judicial
> administrative proceedings; (3) the party was successful
> in asserting the first position (i.e., the tribunal adopted
> the position or accepted it as true); (4) the two positions
> are totally inconsistent; and (5) the first position was not
> taken as a result of ignorance, fraud, or mistake. (emphasis added)

Consequently, the appellee should be judicially estopped from taking any other position than the one he has always espoused, that the attorneys' fees award belongs solely to the attorneys. (MW Erectors, Inc., supra, at 36 Cal.4th 422; Aguilar v. Lerner (2004) 32 Cal.4th 974, 986-987.) Likewise for the Bankruptcy Court. Otherwise, judicial integrity will be compromised and the appellee will have taken an unfair strategy. (Ibid.)

Thus, the appellee did not have standing to bring this adversary proceeding on behalf of the individual creditors. The individual creditors' claims have been paid off and consequently they have not suffered any "affirmative harm" as a result of these alleged transfers of non-Schedule A subject properties and hence did not have standing to bring these actions under the UFTA in Civil Code sections 3439, et seq. (Mehrtash v. Mehrtash (2001) 93 Cal.App.4th 75, 80.) Hence the appellants' motion for summary judgment should have been granted.

IV

THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS DISCRETION
IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT
IN THAT
THERE ARE MATERIAL ISSUES OF FACT REGARDING
THE ISSUE OF FRAUDULENT INTENT

A.  The Standing Issue.

See Argument III, supra.

B.  Material Issues of Fact Exist in this Matter.

Civil Code section 3439.04(a)(1) provides that a transfer of real property is
fraudulent as to a creditor if said transfer was made "[w]ith actual intent to hinder, delay,
or defraud any creditor of the debtor". The appellee relied on section 3439.04(a)(1) to
prove that the transfers at issue were fraudulent according to the UFTA. (See Doc #7,
Notice of Motion and Motion for Summary Judgment Based Upon Actual Fraud, pp. 10-
11.) Appellee also relied on the various "badges of fraud" contained in Civil Code
section 3439.04(b) to establish a "presumption" of fraud, even a 'conclusive'
presumption of fraud. In the appellee/trustee's moving points and authorities he
repeatedly asserted that the presence of "badges of fraud" in Civil Code section
3439.04(b) could be considered to be a presumption of fraudulent intent. (See Doc #7,
Notice of Motion and Motion for Summary Judgment Based Upon Actual Fraud, p.
11(10-12), p. 12(21-23), p. 13(3-4), p. 21(23-24), and p. 22(3-5).)

However as explained in detail in Argument I, supra, "badges of fraud", no matter
how many there are, do not give rise to a presumption of fraud but are "merely evidence
from which an inference of fraudulent intent may be drawn". (In re Serrato (Bkrptcy.
N.D. Cal. 1997) 214 B.R. 219, 229; Annod Corp. v. Hamilton & Samuels (2002) 100
Cal.App.4th 1286, 1298; T W H Homes, Inc. v. Atherwood(1963) 214 Cal.App.2d 826,

844-845.) Moreover, it is well-established that the issue of whether or not the debtor had the requisite "actual intent to hinder, delay, or defraud any creditor of the debtor" is always a question of fact. (Bulmash v. Davis (1979) 24 Cal.3d 691, 699; Flip v. Bucurenciu (2005) 129 Cal.App.4[th] 825, 834; Annod Corp. v. Hamilton & Samuels (2002) 100 Cal.App.4[th] 1286, 1294; T W M Homes, Inc., supra, at 214 Cal.App.2d 844.) Hence summary judgment will be denied where the declarations of the moving and non-moving parties are conflicting and it "cannot be categorically determined which of the two statements is true". (Sarnoff v. Ciagila (1947) 165 F.2d 167, 168-169.) "The resolving of such issues must be left to the finders of fact, and not decided upon a motion for summary judgment." (Id. at 165 F.2d 169; In re Phillips and Hornsby Litigation (M.D. La. 2004) 306 F.Supp.2d 631, 638-640 [triable issues of fact found in conflicting evidence on actual intent to hinder, delay, or defraud a creditor].)

In this matter the debtor's and appellants' declarations conflict with the declarations offered by the appellee regarding debtor's alleged "actual intent to hinder, delay, or defraud any creditor." (See CC { 3439.04(a)(1).) Hence summary judgment should have been denied for the following reasons.

At the time of the alleged transfers in question in March and May of 2003, the debtor did not even know the identity of the individual creditors who ultimately submitted claims in this bankruptcy proceeding. In fact the debtor, at that point in time, did not even know whether there were any creditors at all. The debtor did not know the identity of the individual creditors, he also did not know the nature of said creditors' claims nor the amounts of said claims until about 21 days before the claimant hearings in October of 2003 through January of 2004. No judgments had been entered at that point. There were no judgments against this debtor until about a year and a half after the alleged transfers. How could the debtor have the "actual intent to hinder, delay, or defraud any creditor" when he didn't even know if any such creditor existed, let alone the nature of said creditor's claim or the amount of said creditors' claim? Obviously there were questions of material fact on the issue of the debtor's "actual intent" sufficient to defeat

the appellee's motion for summary judgment[6]. As stated above, neither the debtor nor any of his attorneys, in their wildest imagination, could have predicted a $3.5 million attorneys' fees judgment on a $270,000 underlying judgment back in 2003.

Additionally, the alleged transfers of non-Schedule A subject properties in March and May of 2003 certainly did not render the debtor insolvent. Although the appellee alleged insolvency as a separate claim in this adversary complaint, he is not pursuing this claim in this underlying summary judgment motion, and with good reason. These alleged transfers obviously did not make the debtor insolvent and/or unable to pay the individual creditors' $400,000 claim. Under Civil Code section 3439.04(b)(9) the fact that the debtor never became insolvent can be considered on the issue of his "actual intent" raised in this summary judgment motion. The debtor's Schedule A properties were the very same properties he owned prior to and after the alleged transfers of non-Schedule A properties. As explained in detail in Argument III, supra, the appellee has now liquidated enough of the debtor's Schedule A properties which had sufficient equities and paid off the individual creditors' claims. Obviously the alleged transfers of non-Schedule A properties did not render the debtor judgment proof or insolvent and it did not prevent him or the appellee from satisfying the individual creditors' claims[7].

Moreover, the debtor obviously received a "fair consideration" for these alleged transfers of non-Schedule A properties (adversary properties) contemplated by the UFTA. (See CC { 3439.04(a)(2). The term "fair consideration" in the UFTA "depends on whether the debtor is thereby rendered execution proof". (Hansen v. Cramer (1952) 39 Cal.2d 321, 324-325.) As the California Supreme Court in Hansen explained:

> The test in determining the propriety of a creditor's

---

[6] See Doc #7, Declaration of Debtor re Opposition to Plaintiff's Motion for Summary Judgment Based Upon Actual Fraud, paragraphs 54, 55, 56. Se also Doc #7, Declaration of Farin Yeganeh re Opposition to Plaintiff's Motion for Summary Judgment Based Upon Actual Fraud, paragraphs 1 to 7. Additionally, see Doc #7, Declaration of K. Yeganeh re Opposition to Plaintiff's Motion for Summary Judgment Based Upon Actual Fraud, paragraphs 1 to 7.

[7] See footnote 6, supra, Ramin Yeganeh's declaration at paragraph 56.)

1
2
3
4
5

> challenge of a conveyance for lack of a 'fair consideration'
> wthin the meaning of the act depends on whether the debtor
> is thereby rendered execution proof, and the existence of any
> intent of fraud on the part of either the grantor or the grantee
> is an immaterial factor.

6

(Ibid.)

7
8
9
10
11
12
13
14

Obviously the debtor was not "rendered execution proof", or judgment proof, as a result of these alleged transfers. The debtor owned the same Schedule A properties before and after the alleged transfers of the non-Schedule A properties. The debtor identified his Schedule A properties on his bankruptcy Schedule A. The appellee who is the Chapter 7 trustee of this debtor took control of the debtor's Schedule A properties, and was able to liquidate them to generate over $1.9 million in net proceeds so far. Therefore it is obvious that the debtor did not become judgment proof as a result of these alleged transfers.

15
16
17
18
19
20

Thus there are multiple questions of fact regarding the debtor's alleged "actual intent to hinder, delay, or defraud any creditor". (CC { 3439.04(a)(1).) Although proof of fraud may and usually is made by circumstantial evidence, "it remains true that actual fraud must be proved by clear and convincing evidence". (T M W Homes, Inc., supra, at 214 Cal.App.2d 844.) Moreover, "where the circumstances of the transfer comport equally with the theory of honesty and fair dealing, fraud will not be found". (Ibid.)

21
22
23
24
25
26
27

In this matter the debtor's and the appellants' declarations establish that the "intent to hinder, delay, or defraud" cannot be found, even though the declarations and so-called "evidence" offered by appellee paints a different picture[8]. On the issue of fraudulent intent or the intent to hinder or delay a creditor, where there are conflicting declarations from the moving and non-moving parties and it "cannot be categorically determined which of the two statements is true", summary judgment for the moving party should be denied. (Sarnoff v. Ciaglia (1947) 165 F.2d 167, 168-169.) "The resolving of

28

---

[8] See footnote 6, supra.

such issues must be left to the finders of fact, and not decided upon a motion for

summary judgment." (Id. at 165 F.2d 169; see also In re Phillips and Hornsby Litigation

(M.D. La. 2004) 306 F.Supp.2d 631, 638-640 [triable issues of fact found in conflicting

evidence on actual intent to hinder, delay, or defraud a creditor].)

Thus there are triable issues of fact on the issue of fraudulent intent. Appellee's

summary judgment motion should have been denied by the Bankruptcy Court. Said

judgment should be reversed in its entirety.

CONCLUSION

For the foregoing reasons, the appellee's motion to exclude evidence should have

been denied by the Bankruptcy Court. The appellee cannot establish prejudice by the

appellants' use of the Fifth Amendment during discovery proceedings. Said order of the

Bankruptcy Court should be reversed.

Additionally, the appellants' cross-motion for summary judgment should have

been granted by the Bankruptcy Court in that the individual creditors have been paid off

and have suffered no harm.

Lastly, the appellee's motion for summary judgment should have been denied by

the Bankruptcy Court. The individual creditors have never been harmed as a result of

any alleged transfers of the subject properties in March and May of 2003 because their

claims have been satisfied from the sale of the debtor's Schedule A properties. Also

there are material issues of fact and contradictory declarations regarding whether or not

the debtor possessed the requisite "actual intent to hinder, delay, or defraud" any creditor.

The Bankruptcy Court's judgment should be reversed in its entirety.

February 14, 2008                    Respectfully Submitted,

                                     /S/ WILLIAM E. GILG
                                     WILLIAM E. GILG,
                                     Attorney for Appellants

PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in

the City of San Bruno, that I am over the age of eighteen (18) years and not a party to the

within cause; that I am an active member of the State Bar of California; that my business

address is 305 San Bruno Avenue West, San Bruno, California; and that on the date set

out below I deposited a true copy of the attached documents, listed below, on the parties

to the action by one or more of the following methods:

[XX]  First Class Mail

[]  Fax via (415) 356-4610

– by placing a true copy thereof enclosed in a sealed envelope with postage

thereon fully prepaid in the United States Mail at San Bruno, California;


Documents Served: APPELLANTS' OPENING BRIEF ON APPEAL FROM THE
BANKRUPTCY COURT'S "FINAL JUDGMENT"


Party Served:  CHARLES P. MAHER, ESQ.
               Luce, Forward, Hamilton & Scripps, LLP
               Rincon Center II, 121 Spear St., Suite 200
               San Francisco, CA 94105


I declare under penalty of perjury under the laws of the United States of America

and the State of California that the foregoing is true and correct.

Executed at San Bruno, California on February 14, 2008.

/S/ WILLIAM E. GILG
WILLIAM E. GILG,
Attorney for Appellants

1