WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorneys for Appellants,
Allied Management Trust, K. Yeganeh

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, | ) Case No. C 07-03256 JSW |
| | ) Bankruptcy No. 05-30047 TEC |
| | ) Adversary Proceeding No. 05-3241 TC |
| _____ Debtor. _____ | ) |
| CHARLES E. SIMS, Trustee, | ) APPELLANTS' **REPLY** |
| | ) BRIEF ON APPEAL FROM THE |
| Plaintiff/Appellee, | ) BANKRUPTCY COURT'S |
| v. | ) "FINAL JUDGMENT" |
| | ) |
| ALLIED MANAGEMENT TRUST, | ) |
| K. YEGANEH, | ) |
| | ) |
| _____ Defendants/Appellants. _____ | ) |

Defendants/Appellants Allied Management Trust and K. Yeganeh (hereinafter "appellants") respectfully submit their reply brief on their appeal from the Bankruptcy Court's "Final Judgment" in this matter.

Due to the appellee's misstatements and half-truths concerning the debtor and the defendants contained in her opening brief, the defendants submit the following brief statement of additional facts.

STATEMENT OF FACTS

The appellant, Ken Yeganeh, is a 78 year-old elderly man who is a retired medical doctor. He used to practice medicine in Oakland, California. The appellant purchased

Appellants' Reply Brief on Appeal                    -1-

several properties in Oakland and put them in his trust, Appellant Allied Management Trust, back in March and May of 2003. (See appellee's excerpts of record, ER-198.) In November of 2004, the appellant removed these properties from his trust and put them into his name as an individual. (See appellee's excerpts of record, ER-188-189.) Now the appellee argues that these properties now belong to the debtor and his bankruptcy estate.

The debtor was a California licensed mortgage broker back in the 1990's. He brokered and originated hundreds of mortgage loans in the Bay Area. He never operated an illegal mortgage brokerage business. He never operated a consulting business, let alone an illegal consulting business. The debtor never "targeted and preyed on vulnerable homeowners whose mortgages were in foreclosure". (See appellee's opening brief, p. 4(2-3).) Indeed, over 95 percent of the debtor's clients had good credit and were never in foreclosure. The few clients who had bad credit, primarily due to late payments, tax liens, or judgments, may or may not have been in foreclosure at the time of their dealings with the debtor. The debtor could not discriminate and could not turn away clients simply because they had bad credit or were in foreclosure. The debtor never bought any of the claimants' homes. The debtor never bought his clients' homes using illegal tactics, etc. These allegations by the trustee in her opening brief are outright false. The debtor paid for his properties with the money he earned over the years. The appellee's modus operandi is to demonize the debtor in order to charge his estate exorbitant attorneys' fees and administrative costs. As of today, the appellee/trustee and her attorneys have charged the debtor's estate over $1 million in attorneys' fees. No doubt the appellee/trustee will have a field day if she gets her hands on the appellants' five properties which are the subject of this adversary proceeding.

On October 4, 1999, the debtor was sued in state court by Edith Ingram and Nozipo Wobogo. In October of 1999 the debtor's criminal case also involved the same Edith Ingram who alleged that the debtor did not provide her with the appropriate disclosure under Civil Code section 2945, the California Foreclosure Consultant Law. However this law doesn't even apply to California Licensed Mortgage brokers, such as the debtor. (See CC { 2945.1(b)(3).) In order to avoid a lengthy and expensive six-week criminal trial, which would have cost the debtor over $200,000 in attorney's fees, the

1  debtor in March of 2001 pled no contest to four minor violations of Civil Code section

2  2945.4(g).  The San Mateo County Superior Court sentenced the debtor to five years

3  probation, he was ordered not to engage in any mortgage broker activity in San Mateo

4  County for five years, and his license was suspended for five years.

5       On April 25, 2001, Plaintiff Ingram settled all of her causes of action with the

6  debtor.  On July 30, 2001, the San Mateo County Superior Court granted a summary

7  judgment against the debtor because the debtor did not submit a declaration explaining

8  his pleas as he was so advised by his attorney.  The superior court reasoned that without

9  the debtor's rebuttal, his no contest pleas in the criminal case essentially established the

10  debtor's liability to Ingram.  The appellee now states that somehow the debtor's no

11  contest pleas can be extrapolated to establish his liability to Plaintiff Wobogo and others.

12  This is not the case and even Wobogo's attorneys admitted that this summary judgment

13  order did not establish the debtor's blanket liability to all of his clients.  (See Doc #7

14  ["Defendants' Sur-Rebuttal Memorandum of Points and Authorities in Support of

15  Defendants' Opposition to Plaintiff's Summary Judgment Motion, Ex. 43, pp. 2-3].)  In

16  2001, Plaintiff Wobogo admitted that she had no dealings whatsoever with the debtor,

17  thus she suffered no loss or injury.

18       On July 31, 2001, the debtor filed a skeletal Chapter 13 bankruptcy petition in pro

19  per.  A few days later the debtor entered into a settlement agreement with Plaintiff

20  Wobogo to end this litigation.  As a result of this settlement agreement Wobogo's

21  attorneys insisted that the debtor dismiss this petition.  The debtor did so on August 2,

22  2001.  In August of 2001, the debtor resided at the address of 395 Sequoia Avenue in

23  Redwood City, in order to prepare that property for sale.  This is the address he put on

24  that bankruptcy petition.  (See appellee's excerpts of record, ER-161.)  The appellee's

25  insistence that the debtor purposely misspelled his name and used the wrong address in

26  this petition is a figment of her imagination.  In late 2001 the settlement agreement

27  between the parties fell apart.

     In her opening brief the appellee is attempting to confuse this Court as she did in

28  the lower court, by arguing that the debtor should have listed the adversary properties

(the Allied Properties which actually belonged to Appellants Ken Yeganeh or Allied

1   Management Trust) on his bankruptcy Schedule A.  However the Allied Properties are
2   not the debtor's nor his estate's properties and therefore how could the debtor list them
3   on his Schedule A?

4        In her opening brief, the appellee listed ten alleged "badges of fraud" on the part
5   of the debtor and argued that the appellants did not rebut any of them in their opposition
6   to the appellee's motion for summary judgment in the lower bankruptcy court.  (See
7   appellee's opening brief, pp. 7-10.)  That is simply not true.  The record on appeal speaks
8   for itself.  (See Doc #7 ["Opposition to Plaintiff's Motion for Summary Judgment Based
9   on Actual Fraud"; Declaration of Debtor; Declaration of Ken Yeganeh; Declaration of
10  Farin Yeganeh; Notice of Lodgment of Documentary Evidence, Exs. 1 through 43].)
11  Appellant will go through each badge of fraud.

12       In her excerpts of record, the appellee has 'cherry-picked' some of her original so-
13  called evidence from the record on appeal and has attempted to convince this Court that
14  the summary judgment entered in her favor in the lower court was justified.

15       The first badge of fraud alleges that the debtor used a false name, "R. Rad", to
16  purchase the Allied Properties.  However the name "R. Rad" was not a false name.  It is
17  the debtor's naturalized citizenship name.  (See Doc #7 [Plaintiff's Motion for Summary
18  Judgment, Ex. 27].)  R. Rad was an alias the debtor sometimes used, it was not a false
19  name.    The name "R. Rad" or "R. Rad-Yeganeh" was known to the creditors back in
    April of 2002.  Thus said name did not hinder, delay, or defraud any of the creditors.

20       The second badge of fraud alleges that the debtor transferred the Allied Properties
21  to an insider, a family trust and his father.  The appellee's own documentation offered in
22  support of her opening brief refutes this.  The properties were already held by the trust
23  which was set up for the benefit of K. Yeganeh, the trust's beneficiary.  The trust
24  document states: "The Allied Management Trust is set up for the benefit of the
25  beneficiary, K. Yeganeh, whose beneficial interest is held by the trust.  The trust
26  properties have been bought for the beneficiary."  (See appellee's excerpts of record, ER-
27  198.)  This clearly proves that K. Yeganeh was the beneficiary of Allied Management
28  Trust and all interest to the Allied Properties vested with K. Yeganeh.  The creditors were
    well aware of this fact back in 2003.

1        The third badge of fraud alleges that the debtor transferred the Allied Properties to

2    an insider after the state court entered summary judgment against him.  This may be true

3    but it does not prove that these properties belonged to the debtor.  Just because these

4    properties were put in a trust in 2002 and 2003 (obviously after the entry of this summary

5    judgment on July 31, 2001) it does not prove that these properties ever really belonged to

6    the debtor. (See Doc #7 [Declaration of Ken Yeganeh in Opposition to Plaintiff's Motion

7    for Summary Judgment, paragraphs 2 through 6 (Mr. Ken Yeganeh, a retired medical

8    doctor, explaining that he used to practice medicine in Oakland and that he gave his son,

9    the debtor, money to buy the properties in question and that the debtor put the properties

10   into his father's trust. Mr. Ken Yeganeh has paid all property taxes on said property, all

11   mortgage payments, and all insurance on said properties.)]; see also Doc #7 [Defendants'

     Notice of Lodgment of Documentary Evidence, Exs. 38 through 41.)

12       The fourth badge of fraud alleges that the debtor transferred the Allied Properties

13   in violation of a preliminary injunction issued by the state court.  Although the debtor

14   was found in contempt of court, it was because the state court found that these properties

15   were sold.  The fact is these properties were never sold.  They were always the properties

16   of Ken Yeganeh or his trust.  (See citation in the above-analysis for the third badge of

17   fraud.)  Ken Yeganeh simply transferred the properties from his trust back into his name

18   as an individual.  (See appellee's excerpts of record, ER-188.)  The beneficiary of a trust

19   is entitled to transfer his properties in or out of a trust as he wishes.  There is nothing

20   fraudulent about that.

21       The fifth badge of fraud alleges that no consideration was paid by Allied

22   Management Trust for the Allied Properties.  The fact is these properties were never sold.

23   They were always the properties of Ken Yeganeh or his trust.  (See citation in the above-

     analysis for the third badge of fraud.)  Just because Ken Yeganeh put the properties into

24   his trust or took them out of his trust does not mean the properties were sold.  (See

25   appellee's excerpts of record, ER-188, ER-198.)

26       This sixth badge of fraud alleges that the debtor gave false testimony in order to

27   hinder, delay, or defraud creditors.  That is the debtor allegedly denied that he was R. Rad

28   in a deposition.  This testimony took place in April of 2002, before any of the Allied

1   Properties were purchased. The Allied Properties were not purchased until June of 2002
2   to January of 2003. (See appellee's opening brief, p. 5(22-27).) Hence this testimony is
3   irrelevant to this proceeding.

4          The seventh badge of fraud alleges that the debtor gave false testimony about
5   Allied Management Trust. That is the debtor signed a declaration attesting that Allied
6   Management Trust was an independent investor. This was true, the trust was set up for
7   the benefit of Ken Yeganeh. At the contempt hearing the debtor simply misspoke when
8   he testified that he was the beneficiary of said trust. The trust document itself indicates
9   that the beneficiary was Ken Yeganeh and the trust was set up for his benefit. The debtor
10  was only the trustee at the time. (See appellee's excerpts of record, ER-198.) The debtor
11  resigned as the trustee of this trust in July of 2003. (See appellee's excerpts of record,
    ER-237.)
12
13         The eighth badge of fraud alleges that after the debtor transferred the Allied
14  Properties to the trust, he continued to treat these properties as his own. The debtor acted
15  as property manager for his elderly father. Ken Yeganeh acknowledged that from time to
16  time his son, the debtor, managed these properties because of Ken Yeganeh's old age and
17  poor health situation. He also averred that his son had never been the owner of these
18  properties. (See Doc #7 [Declaration of Ken Yeganeh, paragraphs 5-7]; see also Doc #7
19  [Defendants' Notice of Lodgment of Documentary Evidence, Ex. 40, p. 13(24-25), p.
20  19(5-12), p. 33(2-9).) Ken Yeganeh is a 78 year-old elderly man in poor health. Just
21  because he could not remember what he paid for the properties in question three years
22  earlier and could not remember the rental income from these properties, that does not
23  mean he is not the owner of these properties. Ken Yeganeh continued to pay the property
24  taxes, mortgage payments, and insurance on these properties, before and after this
25  adversary proceeding was bought against him. Just because the debtor helped his elderly
    father from time to time in his affairs, that does not mean that the appellants' properties
26  belonged to the debtor.
27
28         The ninth badge of fraud alleges that the debtor and Ken Yeganeh asserted their
    Fifth Amendment rights in order to prevent the trustee from obtaining evidence to prove
    their case. Ken Yeganeh and the debtor only asserted the Fifth Amendment on the issue

of their income taxes and the identity of the tenants occupying the Allied Properties. In fact the trustee already had the debtor's tax returns. Said tax returns clearly show that the Allied Properties were not the debtor's. Thus their invocation of the Fifth Amendment did not prevent the trustee from obtaining evidence to prove her case. Moreover, when is the invocation of the Fifth Amendment, a constitutional right, a badge of fraud?

The tenth and last badge of fraud alleges that the debtor testified to destroying records relating to the Allied Properties in 1999 in order to avoid having those documents used against him by his creditors. The debtor was not the owner of these properties, Ken Yeganeh was, and Ken Yeganeh produced these records for the appellee/trustee. He produced copies of the property tax payments, insurance payments, and mortgage payments on the Allied Properties. (See Doc #7 [Defendants' Notice of Lodgment of Documentary Evidence, Exs. 38 through 41].) The debtor had no documents pertaining to the Allied Properties in 1999 or after, because he was not the owner of these properties. (See also Doc #7 [Debtor's Declaration in Opposition to Plaintiff's Motion for Summary Judgment, paragraph 52].)

In conclusion, if the debtor wished to hinder, delay, or defraud his creditors, at any time after the summary judgment of July 31, 2001, and after the October of 2001 preliminary injunction, which prohibited him from selling or transferring any of his properties, why would he want to purchase five properties? It is obvious a debtor who wishes to delay, hinder, or defraud his creditors would want to sell properties rather than purchase additional properties.

Also the badges of fraud are all about facts surrounding the alleged transfers of these Allied Properties in or out of Ken Yeganeh's trust. These facts are disputed in defendants/appellants' opposition to the plaintiff/appellee's motion for summary judgment and the declarations in support thereof. These are triable issues of fact.

//

//

1

<u>I</u>

2

<u>THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS DISCRETION</u>

3

<u>IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT</u>

4

<u>IN THAT</u>

5

<u>THERE ARE MATERIAL ISSUES OF FACT REGARDING</u>

6

<u>THE ISSUE OF FRAUDULENT INTENT</u>

7

8

     Appellee attempts to make hay out of her "badges of fraud" argument. She

9

argues that the appellant has not rebutted these badges of fraud and thus there is a

10

presumption of actual fraud in this matter. As the above statement of facts establish, the

appellants have definitely rebutted each of the ten badges of fraud in the appellee's

11

opening brief. Moreover the appellee is misleading this Court in that no matter how

12

many badges of fraud this Court may find, there can be no presumption of fraud made on

13

that basis. Said badges of fraud will only support an inference of fraud, which <u>may</u> be

14

drawn. (<u>In re Serrato</u> (Bkrtcy. N.D. Cal. 1997) 214 B.R. 219, 229; <u>Annod Corp. v.</u>

15

<u>Hamilton & Samuels</u> (2002) 100 Cal.App.4th 1286, 1298; <u>T W H Homes, Inc. v.</u>

16

<u>Atherwood</u> (1963) 214 Cal.App.2d 826, 844-845.)

17

              an actual intent to defraud 'never arises as a

18

              matter of law from the existence of any given

19

              set of facts. It must be proved just as any other

20

              material fact in issue. Its proof is peculiarly dependent

21

              upon the circumstances which surround the questioned

22

              transaction, and the inferences which the trier of the

              facts may reasonably draw therefrom'.

23

24

(<u>T W M Homes, Inc.</u>, supra, at 214 Cal.App.2d 844-845.)

25

     Nevertheless appellee seeks to hoodwink this Court into ruling otherwise. She

26

cites two cases for her position that: "If unrebutted, evidence establishing only one or two

27

of the badges of fraud creates a strong presumption that a transfer was fraudulent". (See

28

appellee's opening brief, p. 17(5-7).

1    The first case cited is <u>McDonald v. Schumann</u> (2004) 2004 Bankr. Lexis. 819.

2    This is not even a California case. It is a Texas case that applied Colorado law to alleged

3    fraudulent transfers. It does not even mention California's Uniform Fraudulent Transfer

4    Act ("UFTA") with which we are concerned with here, and is thus totally inapplicable.

5    Moreover it doesn't even hold that any type of presumption exists based on badges of

6    fraud: "One of these factors may be sufficient to find actual fraudulent intent; an

7    accumulation of several such factors strongly indicates that the debtor possessed the

     requisite intent." (<u>Id</u>. at 2004 Bankr. Lexis *23.)

8

9    The second case is a California case, <u>Filip v. Bucurenciu</u> (2005) 129 Cal.App.4th

10   825, at 834.) At least the <u>Filip</u> case did deal with California law and the UFTA.

     However it does not hold that there can be any type of presumption of fraud no matter

11   how may badges of fraud can be established. To the contrary it holds that said badges of

12   fraud can, at best, only support an "inference" of fraud: "Whether a conveyance was

13   made with fraudulent intent is a question of fact and proof often consists of inferences

14   from the circumstances surrounding the transfer." (<u>Ibid</u>.) <u>Filip</u> did discuss these "badges

15   of fraud" but only held that:

16                   these factors do not create a mathematical formula

17                   to establish actual intent. There is no minimum number

18                   of factors that must be present before the scales tip in

19                   favor of finding of actual intent to defraud. This list

20                   of factors is meant to provide guidance to the trial

21                   court, not compel a finding one way or the other.

     (<u>Ibid</u>.) <u>Filip</u> doesn't even mention the word "presumption" in that regard.

22

23        In any event, it is well-established that "when the circumstances shown, are

24   equally consistent with fraud and with innocence, the plaintiff has failed to carry his

25   burden of proving the fact of fraud by a <u>preponderance</u> of the evidence." (emphasis

26   original) (<u>Liodas v. Sahadi</u> (1977) 19 Cal.3d 278, 292.) As the above-referenced

27   Statement of Facts indicates, the appellants have explained the circumstances as to each

     of the ten badges of fraud and said circumstances are equally consistent with innocence.

28

Additionally, summary judgment will be denied where the declarations of the moving and non-moving parties are conflicting and it "cannot be categorically determined which of the two statements is true". (Sarnoff v. Ciagila (1947)165 F.2d 167, 168-169.) "The resolving of such issues must be left to the finders of fact, and not decided upon a motion for summary judgment." (Id. at 165 F.2d 169; In re Phillips and Hornsby Litigation (M.D. La. 2004) 306 F.Supp.2d 631, 638-640 [triable issues of fact found in conflicting evidence on actual intent to hinder, delay, or defraud a creditor].)

In this matter the debtor's and appellants' declarations conflict with the declarations offered by the appellee regarding debtor's alleged "actual intent to hinder, delay, or defraud any creditor." (See CC { 3439.04(a)(1).)

Hence at the very minimum, triable issues of fact exist as to each said alleged badge of fraud. As a result, the lower bankruptcy court's granting of the appellee's summary judgment motion should be reversed.


## II

### THE BANKRUPTCY COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANTS' CROSS-MOTION FOR SUMMARY JUDGMENT IN THAT THE APPELLEE/TRUSTEE LACKS STANDING TO EVEN PROSECUTE THIS ADVERSARY PROCEEDING SINCE THE CREDITORS HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF THESE ALLEGED FRAUDULENT TRANSFERS


The appellee/trustee makes little of this argument in her opening brief, spending less than two pages worth of argument against it. (See appellee's opening brief, p.19(14)—p.21(3).) The appellee essentially argues that since the lower bankruptcy court found that the claimants' claims filed in that court, which piggybacked the attorneys' fees onto said claim even though admittedly these creditors are not entitled to one penny of these attorneys' fees, were valid, the appellant is barred from challenging this

1  determination because it is a collateral order. Without conceding this point, the

2  appellee's argument misses the point.

3      The point is that the claimants who submitted claims have been completely paid

4  off and the appellee admits this: "approximately $1.1 million has been paid to creditors

5  on an interim basis – all of it paid after the hearing on the summary judgment motion at

6  issue in this appeal". (See appellee's opening brief, p. 19(28)—p.20(2).) The creditors'

7  claims only amounted to approximately $400,000, that is the restitutionary judgment

8  amount of $270,000 plus prejudgment interest. The remaining amount on their claims,

9  the piggybacked attorneys' fees amount, do not belong to the creditors, it belongs to the

10  attorneys. These attorneys never submitted a claim in the lower bankruptcy court for

   these attorneys' fees. The appellee cannot dispute this. It has been her position all along

11  in this litigation that the attorneys' fees belong to the attorneys, not the claimants. (See

12  Doc #7, Notice of Lodgment of Documentary Evidence in Support of Defendants'

13  Opposition to Plaintiff's Motion for Summary Judgment, Exhibit #42, p. 4.)

14      At this point the appellee is judicially estopped from taking any other position in

15  that regard. Judicial estoppel is an equitable doctrine that precludes a party from gaining

16  an advantage by asserting one position and then later seeking an advantage by taking a

17  clearly inconsistent position. (Hamilton v. State Farm Fire & Cas. Co. (9th Cir. 2001) 270

18  F.3d 778, 782; Marshall v. Marshall (C.D. Cal. 2002) 273 B.R. 822, 832.) Ninth Circuit

19  law invokes judicial estoppel not only to prevent a party from gaining an advantage by

20  taking inconsistent positions, but also because of "general considerations[s] of the orderly

21  administration of justice and regard for the dignity of judicial proceedings", and to

22  "protect against a litigant playing fast and loose with the courts." (Hamilton, supra, at

23  270 F.3d 782; Marshall, supra, at 273 B.R. 832.)

24      Under California law a creditor bringing an avoidance action pursuant to Civil

25  Code section 3439, et seq., must have suffered affirmative harm. Civil Code section

26  3439.04(a) requires the transfer to be "fraudulent as to a creditor". (Mehrtash v.
   Mehrtash (2001) 93 Cal.App.4th 75, 80.)

27              A well established principal of the law of fraudulent
28              transfers is, 'A transfer in fraud of creditors may be
                attacked only by one who is injured thereby. Mere

1  intent to delay or defraud is not sufficient; <u>injury to</u>
2  <u>the creditor must be shown affirmatively</u>. In other
   words, <u>prejudice to the plaintiff is essential</u>. It cannot
3  be said that a creditor has been injured <u>unless the</u>
   <u>transfer puts beyond</u> [her] <u>reach property</u> [she]
4  <u>otherwise would be able to subject to the payment of</u>
5  [her] <u>debt'</u>. (emphasis added)

6  (<u>Ibid</u>; <u>Bennett v. Paulson</u> (1935) 7 Cal.App.2d 120, 123; <u>Haskins v. Certified Escrow &</u>
7  <u>Mtge. Co.</u> (1950) 96 Cal.App.2d 688, 691; <u>A/S Kreditt-Finans v. Cia Venetico De</u>
8  <u>Navegacion, S.A. of Panama</u> (E.D.Pa. 1983) 560 F.Supp. 705, 711, aff'd 729 F.2d 1446
9  (3rd Cir. 1984) ["numerous courts in other jurisdictions in which the issue has arisen have
10 stated as though it were axiomatic the requirement that a creditor be injured by the
11 conveyance it seeks to invalidate".] This is a principal in equity. A plaintiff/creditor
12 seeking the equitable relief of setting aside a transfer of property must show entitlement
13 to relief and inadequacy of a remedy at law. This is axiomatic "because ordinarily
14 creditors do not bother to seek avoidance of debtor's conveyances without a clear
   prospect of profiting by the litigation." (<u>Mehrtash</u>, supra, at 93 Cal.App.4[th] 80.)

15     Here the individual claimants who submitted their claims piggybacked with the
16 attorneys' fees have been paid in full. That is they have been paid their collective
17 $400,000 and have no "right to payment" of one penny of the approximate $3.5 million
18 in attorney's fees. (CC { 3439.01(b) ["claim" in UFTA "means a right to payment"]; see
19 11 U.S.C. { 101(5)(a); see also CC { 3439.01's "Legislative Committee Comment—
20 Assembly (1986 Addition) ["The definition of 'claim' is derived from (former) Section
21 101(4) of the Bankruptcy Code].) A "right to payment" is determined by state
22 substantive law, here the law of UFTA and California. (<u>Butner v. United</u> States (1979)
23 440 U.S. 48, 55, 59 L.Ed.2d 136, 99 S.Ct. 914; In <u>re First Alliance Mortg. Co.</u> (C.D. Cal.
24 2001) 269 B.R. 428, 435.) According to California law, the right to payment of the
25 attorney's fees in this matter belongs to the attorneys. (CCP { 1021.5; <u>Folsom v. Butte</u>
26 <u>County Assn. of Governments</u> (19820 32 Cal.3d 668, 682 & fn. 26; <u>Flannery v. Prentice</u>
   (2001) 26 Cal.4[th] 572, 577, 582.)

27     The individual creditors in this bankruptcy proceeding who have submitted claims
28 were not harmed or prejudiced as a result of the alleged transfers in question. They are
   thus not entitled to relief under California's UFTA. Neither is the appellee/trustee

1  standing in their shoes.  (Mehrtash, supra, at 93 Cal.App.4[th] 81.)  It is that simple.

2  Summary judgment should have been entered in favor of the appellants, not in favor of

3  the appellee/trustee.

### CONCLUSION

5          For the foregoing reasons, the appellee's motion to exclude evidence should have

6  been denied by the Bankruptcy Court[1].  The appellee cannot establish prejudice by the

7  appellants' use of the Fifth Amendment during discovery proceedings.  Said order of the

8  Bankruptcy Court should be reversed.

9          Additionally, there are material issues of fact and contradictory declarations

10 regarding whether or not the debtor possessed the requisite "actual intent to hinder, delay,

11 or defraud" any creditor.  This establishes triable issues of fact.

12         Also, the appellants' cross-motion for summary judgment should have been

13 granted by the Bankruptcy Court in that the individual creditors have been paid off and

14 have suffered no harm.

15         Lastly, the appellee's motion for summary judgment should have been denied by

16 the Bankruptcy Court.  The individual creditors have never been harmed as a result of

17 any alleged transfers of the subject properties in March and May of 2003 because their

18 claims have been satisfied from the sale of the debtor's Schedule A properties.  Also

19 there are material issues of fact and contradictory declarations regarding whether or not

20 the debtor possessed the requisite "actual intent to hinder, delay, or defraud" any creditor.

21 The Bankruptcy Court's judgment should be reversed in its entirety.

23 April 28, 2008                           Respectfully Submitted,

24                                          /S/ WILLIAM E. GILG

25                                          WILLIAM E. GILG,

26                                          Attorney for Appellants

27

28
_____

[1] Appellants refer to their argument on this issue contained in their opening brief.

## PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in

the City of San Mateo, that I am over the age of 18 and not a party to the within cause;

that my business address is 305 San Bruno Avenue West, San Bruno, California; and that

on the date set out below I deposited a true copy of the attached documents, listed below,

on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

[ ]  Fax via ( )

[]  Personal Service

--by placing a true copy thereof enclosed in a sealed envelope with postage

thereon fully prepaid in the United States Mail at San Bruno, California;


Documents Served: APPELLANTS' REPLY BRIEF ON APPEAL FROM THE
BANKRUPTCY COURT'S "FINAL JUDGMENT"


Party Served:  CHARLES P. MAHER, ESQ.
               Luce, Forward, Hamilton & Scripps, LLP
               Rincon Center II, 121 Spear St., Suite 200
               San Francisco, CA 94105


I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed at San Bruno, California on April 28, 2008.

/S/ WILLIAM E. GILG
WILLIAM E. GILG

1